**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Norah Van Dusen**, OSB No. 180114
Email: norah@lmhlegal.com
**Sara Long**, OSB No. 224433
Email: saralong@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Rebecca J. Roe**, WSBA No. 7560
Email: roe@sgb-law.com
**Hong Jiang**, WSBA No. 51914
Email: jiang@sgb-law.com
**Benjamin C. Gauen**, WSBA No. 41815
Email: gauen@sgb-law.com
Schroeter Goldmark & Bender
401 Union Street, Suite 3400
Seattle, Washington 98101
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
*Applications for Pro Hac Vice Forthcoming*

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| H.A.H., D.B.R., R.L.H., P.D., B.A.K., S.M.S., A.Z., A.T.C., Z.C.S., M.J., H.C.R., W.A., B.P., and T.D.P., <br><br> Plaintiffs, <br><br> vs. <br><br> OREGON YOUTH AUTHORITY, MARCIA ADAMS, BILL THOMAS, WILLIAM CAREY, RICHARD HILL, KAREN BRAZEAU, ROBERT JESTER, BOBBY MINK, COLETTE PETERS, FARIBORZ PAKSERESHT, JOSEPH O'LEARY, GARY LAWHEAD, MIKE | Case No.  3:25-cv-02266 <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

CONZONER, DARIN HUMPHREYS, MIKE
RIGGAN, SID THOMPSON, DAN BERGER,
AND UNKNOWN STAFFERS #1-15,

              Defendants.

## NATURE OF ACTION

The Oregon Youth Authority ("OYA") employed Dr. Edward Gary Edwards for more than four decades as the primary physician at the MacLaren Youth Correctional Facility ("MacLaren") in Woodburn, Oregon. During that time, Edwards abused hundreds, perhaps thousands, of vulnerable young men under the guise of providing medical care. Fourteen of his victims are the Plaintiffs in this lawsuit.

Each Plaintiff was incarcerated at OYA facilities between 1989 and 2021, and received one or more "medical examinations" from Edwards. During these "exams," Edwards subjected Plaintiffs to genital touching, including fondling, masturbation, and anal digital penetration. This conduct was medically unnecessary and sexually motivated.

Because Edwards was a doctor and the exams took place in the MacLaren medical clinic, some Plaintiffs did not perceive Edwards' conduct as abusive at the time. Others assumed the conduct was acceptable because MacLaren staff joked about "Dr. Cold Fingers"—Edwards' nickname—and his "exams" rather than intervening to protect the vulnerable youth in their care. Though some Plaintiffs filed grievances, those went unaddressed and uninvestigated, creating the impression that Edwards' conduct was not abusive such that complaining was futile.

News broke in March 2025 of Edwards' predatory abuse that spanned decades and OYA's knowledge of complaints from youth and parents, suggesting that successions of officials had engaged in deliberate cover ups for years. It was not until then or afterwards that Plaintiffs learned

of the extent of the abuse and OYA's responsibility in allowing it to continue unabated for over 40 years.

Individual Defendants in this case include former OYA Directors and MacLaren Superintendents, whose acts (and failures to act) enabled Edwards' abuse to persist for decades, including from 1989 to 2021 when Plaintiffs were in their care. The individual Defendants' actions deprived Plaintiffs of their fundamental rights.

This action is brought pursuant to 42 U.S.C. § 1983 for the violation of Plaintiffs' civil rights and under the Oregon Tort Claims Act for negligence.

## PARTIES

1.      Plaintiff H.A.H. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

2.      Plaintiff D.B.R. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

3.      Plaintiff R.L.H. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

4.      Plaintiff P.D. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

5.      Plaintiff B.A.K. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

6.      Plaintiff S.M.S. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

7.      Plaintiff A.Z. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

COMPLAINT - 3
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

8.     Plaintiff A.T.C. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

9.     Plaintiff Z.C.S. was at all relevant times a resident of the state of Oregon. He is proceeding under his initials.

10.     Plaintiff M.J. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

11.     Plaintiff H.C.R. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

12.     Plaintiff W.A. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

13.     Plaintiff B.P. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

14.     Plaintiff T.D.P. is, and at all relevant times was, a resident of the state of Oregon. He is proceeding under his initials.

15.     Defendant MARCIA ADAMS was the Assistant Director of Health Services at OYA starting in 2011, the OYA supervising physician in 2017, and Director of Health Services in 2018. She remains in that position currently. She was Edwards' supervisor from 2017 until he resigned. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Adams is sued in her individual capacity.

16.     Defendant BILL THOMAS was the Administrator of Children's Services Division (CSD) from 1989 through 1990. As the Administrator, he was employed by CSD, a state administrative agency, and acting under color of state law. All conduct alleged below occurred

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

within the course and scope of his employment with CSD. Defendant Thomas is sued in his individual capacity.

17.    Defendant WILLIAM CAREY was the Administrator of CSD in 1990. As the Administrator, he was employed by CSD, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with CSD. Defendant Carey is sued in his individual capacity

18.    Defendant RICHARD HILL was the Juvenile Corrections Director from 1992 to 1995 and later the Director of OYA from 1995 through 2000. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Hill is sued in his individual capacity.

19.    Defendant KAREN BRAZEAU was the Director of OYA from 2000 through 2004. As the Director, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Brazeau is sued in her individual capacity.

20.    Defendant ROBERT JESTER was the Director of OYA from 2004 through 2008. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Jester is sued in his individual capacity.

21.    Defendant BOBBY MINK was the Director of OYA from 2008 through 2009. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Mink is sued in his individual capacity

COMPLAINT - 5
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

22.     Defendant COLETTE PETERS was the Director of OYA from 2009 through 2012. As the Director, she was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of her employment with OYA. Defendant Peters is sued in her individual capacity.

23.     Defendant FARIBORZ PAKSERESHT was the Director of OYA from 2012 through 2017. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Pakseresht is sued in his individual capacity

24.     Defendant JOSEPH O'LEARY was the Director of OYA from 2017 through 2021. As the Director, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant O'Leary is sued in his individual capacity.

25.     Defendant Hill was the Superintendent of MacLaren from late 1988 to around 1992. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Hill is sued in his individual capacity.

26.     Defendant Jester was the Superintendent of MacLaren from 1993 through 1996. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Jester is sued in his individual capacity.

27.     Defendant GARY LAWHEAD was the Superintendent of MacLaren from 1996 through 2005. As the Superintendent, he was employed by OYA, a state administrative agency,

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Lawhead is sued in his individual capacity.

28.     Defendant MIKE CONZONER was employed as the Superintendent of MacLaren from 2005 through 2006. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Conzoner is sued in his individual capacity.

29.     Defendant DARIN HUMPHREYS was employed as the Superintendent of MacLaren from 2006 through 2008. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Humphreys is sued in his individual capacity.

30.     Defendant MIKE RIGGAN was employed as the Superintendent of MacLaren from 2008 to early 2010. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Riggan is sued in his individual capacity.

31.     Defendant SID THOMPSON was employed as the Superintendent of MacLaren from early 2010 through late 2013. As the Superintendent, he was employed by OYA, a state administrative agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Thompson is sued in his individual capacity.

32.     Defendant DAN BERGER was employed as the Superintendent of MacLaren from 2014 through 2025. As the Superintendent, he was employed by OYA, a state administrative

agency, and acting under color of state law. All conduct alleged below occurred within the course and scope of his employment with OYA. Defendant Berger is sued in his individual capacity.

33.    All the individual Defendant Superintendents listed above will be collectively referred to as "Superintendents."

34.    All the individual Defendant Directors listed above will be collectively referred to as "Directors."

35.    Based on information and belief, UNKNOWN STAFFERS #1-15 are current or former employees of OYA, a state administrative agency, and were acting under color of state law. Their identities are currently unknown to Plaintiffs. UNKNOWN STAFFERS #1-15 were aware of reports and indications that Edwards posed a danger of sexual abuse to youth in OYA custody. All conduct alleged below occurred within the course and scope of their employment with OYA. They are sued in their individual capacities.

36.    Edward Gary Edwards was employed by OYA, a state administrative agency, as a physician and was acting under color of state law. As discussed below, Edwards engaged in intentional conduct resulting in one or more of the following: mental injury, rape, sexual assault, and/or sexual exploitation of Plaintiffs as those terms are defined in ORS 12.117 or ORS 12.115. All conduct alleged herein occurred within the course and scope of his employment with OYA.

37.    The OYA is the state agency that operates MacLaren and other youth facilities. Under the Oregon Tort Claims Act, it is subject to liability for the torts of its officers, employees, and agents acting within the scope of their employment or duties.

COMPLAINT - 8
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

## GENERAL ALLEGATIONS

### *"Doctor Cold Fingers"*

38.     In 1977, Edwards started working for OYA as a pediatrician providing medical examinations, diagnoses, and treatment to youth incarcerated at MacLaren. On information and belief, Edwards was named chief medical officer at MacLaren in 1997.

39.     On information and belief, Edwards was the primary medical provider at MacLaren through at least 2017. He was the only doctor working on site full-time at MacLaren during those years and oversaw medical care for all youth at MacLaren. OYA required every youth who entered MacLaren to participate in an initial intake examination, periodic physicals, and to receive medical care at the MacLaren clinic. MacLaren's medical clinic was the youths' only on-site source of medical care, and, as a result, all youth were required to have some level of physical contact with Edwards for anything from a sore throat to a broken bone.

40.     Edwards was infamously known as "Dr. Cold Fingers" by youth and staff for abusively touching detained youth—specifically young boys and men—with ungloved hands during exams. The abusive touching included digitally penetrating their anuses; stroking or masturbating their penises; and fondling their testicles. This abuse occurred during intake exams, follow-up physicals, and other medical visits. These encounters occurred in Edwards' exam room when no nurse or chaperone was required by OYA to be present. Young males coming from isolation or Secure Intensive Treatment Program ("SITP") were at times required to be cuffed and shackled during these visits.

41.     MacLaren staff made jokes about Edwards, and some corrections officers weaponized medical visits by threatening to send youth to "Dr. Cold Fingers" for disobeying staff

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

directions. Youth who balked at Edwards' exams were threatened with "the hole" if they persisted in resisting.

42.    On occasion, Edwards resorted to physical force when youth declined medical care.

43.    Other staff members glossed over youths' reports or complaints about Edwards by explaining that he was a doctor and therefore he knew what he was doing.

44.    Older adjudicated youth frequently warned newly arrived boys about Edwards.

45.    As early as 1999, and repeatedly after that, multiple youth reported Edwards to MacLaren staff, including counselors. Staff and administrators at OYA took no action to protect youth from Edwards' sexual abuse; instead, OYA allowed the abuse to continue unabated in plain sight.

46.    OYA empowered Edwards to perform the duties of a doctor and knew that he was in a position of authority, power, and trust over the youth at MacLaren, including Plaintiffs. OYA retained the right to control the delivery of appropriate medical care, including the exam procedures used, proper patient privacy protections, the presence or absence of chaperones during medical exams, medical charting procedures, and reporting procedures for complaints from youth patients. Yet in the face of multiple complaints by multiple youth and widespread knowledge of Edwards' reputation—including his disturbing nickname—OYA failed to take even minimally protective steps, such as requiring a chaperone during "exams" or consulting with other medical professionals about the necessity of Edwards' invasive "procedures."

47.    OYA's failure to act caused Plaintiffs to believe that Edwards' behavior was standard medical care, a belief reinforced by OYA staff's repeated assurances. Plaintiffs reasonably relied upon these assurances.

COMPLAINT - 10
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

*OYA's Knowledge of Problems with Edwards*

48.    Defendants in this case knew or should have known that OYA has a long history of turning a blind eye to reports of staff sexually abusing youth at its facilities by failing to investigate reports of abuse, properly train staff, and implement or properly follow policies that would protect youth from sexual abuse by staff.

49.    Despite this knowledge, and even when faced with credible information that Edwards was engaging in inappropriate behavior with youth at MacLaren, Defendant Directors, Superintendents, and staff failed to take even minimal steps to address the issue. For example, Defendants failed to:

    a.    Question or investigate why the only full-time doctor on staff at MacLaren was referred to as "Dr. Cold Fingers";

    b.    Investigate complaints and concerns of youth and staff;

    c.    Consult with any outside agency or resources regarding the medical necessity or appropriateness of the medical exams Edwards performed;

    d.    Report Edwards' conduct to law enforcement;

    e.    Report Edwards' conduct to Oregon Department of Human Services (ODHS);

    f.    Report Edwards' conduct to the Oregon Medical Board or other supervisory agencies;

    g.    Increase supervision of youth during encounters with Edwards;

    h.    Educate staff regarding appropriate behavior between a doctor and a youth patient;

    i.    Implement a functional grievance system;

    j.    Track grievances or complaints regarding Edwards specifically; and

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

k.  Investigate grievances, including resolving founded investigations with appropriate discipline, such as terminating Edwards' employment.

50.  Indeed, despite credible, repeated concerns about Edwards, Defendants continued to promote him throughout his tenure at MacLaren, further indicating to the youth at MacLaren that OYA administration and staff approved of Edwards' conduct and viewed it as acceptable behavior from a medical professional.

***PREA Standards***

51.  When Congress passed the Prison Rape Elimination Act ("PREA") in 2003, it included standards to substantially reduce the risk of sexual abuse, harassment, and exploitation of youth in custody.

52.  Individual OYA Defendants were aware of the requirements of the PREA Standards for Juvenile Facilities.

53.  OYA adopted policies with respect to sexual abuse of youth that are designed to implement the PREA standards.

54.  In 2005, OYA adopted its own "zero-tolerance" policy toward sexual abuse and harassment in its youth facilities, aligning its practices with PREA principles even before the federal standards were finalized.

55.   In 2006, OYA created a Professional Standards Office ("PSO") to investigate allegations of sexual abuse and sexual harassment—a significant early implementation step toward PREA compliance.

56.  In 2009, OYA established a full-time PREA coordinator in the PSO and requested and received technical assistance from the National Institute of Corrections and the Moss Group to assess OYA's compliance with PREA standards. In response to recommendations from these

COMPLAINT - 12
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

groups, OYA updated its zero-tolerance policy in 2010 and designated a Sexual Assault Response Team in every close-custody facility and parole/probation office to address the medical and mental health needs of victims of sexual abuse.

57. Individual OYA Directors failed in their obligation to supervise, direct, and/or manage the PSO to ensure that (i) staff had proper training, including how to maintain PREA compliance; (ii) adequate staff to complete investigations; (iii) complaints were timely investigated and completed; and (iv) staff appropriately responded to PSO investigations, including reporting cases to the state police, disciplining OYA staff, and/or taking other remedial actions to prevent future abuse.

58. Despite OYA's well known history of allowing the sexual abuse of youth in its care, individual Directors failed to ensure that OYA followed its own policies designed to protect youth, such as Plaintiffs, from sexual abuse by staff, such as Edwards.

59. Individual Directors and Superintendents were responsible for ensuring MacLaren's compliance with PREA and for enacting and enforcing OYA policies to implement PREA standards at MacLaren, including appointing a PREA Compliance Manager ("PCM") to coordinate the facility's compliance efforts.

60. Individual Directors and Superintendents had an obligation to ensure that staff strictly adhered to PREA standards and OYA's own policies designed to prevent sexual abuse of youth by staff, including ensuring that staff reported any suspicion of sexual abuse to the PCM.

61. By failing to ensure that OYA's policies to prevent, investigate, and respond to sexual abuse were followed or enforced at MacLaren, and by ignoring credible information that Edwards was engaging in sexual abuse of youth under the guise of medical care, individual OYA

COMPLAINT - 13
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Directors and Superintendents consciously disregarded widespread sexual abuse of youth in their care.

62.    On March 13, 2025, Oregon Department of Administration Services ("DAS") released an Investigation Report ("DAS Report") regarding allegations of mismanagement and governmental misconduct at OYA.

63.    The DAS Report uncovered evidence that during an audit of the PSO, "[s]everal current and past OYA employees of the PSO allegedly reported . . . problems with the youth cases to OYA administrators (past and present). These reports were allegedly met with an apathetic or passive response to the associated safety concerns of youth in custody."[1]

### ABUSE OF H.A.H.

64.    H.A.H. is 54 years of age. He was adjudicated as a juvenile in 1990 and committed to the care and custody of OYA. OYA placed him at MacLaren.

65.    Edwards fondled H.A.H.'s penis and testicles during various medical exams.

66.    H.A.H. was embarrassed and ashamed at the time and believed it was his own fault that he obtained an erection during the exam. He assumed that Edwards' conduct was appropriate medical care.

67.    H.A.H. did not learn about Edwards' other victims until May or June of 2025. When H.A.H. learned about Edwards' other victims, he realized Edwards' conduct did not constitute appropriate medical care but was in fact abusive.

68.    It was also at that time that H.A.H. became aware of Edwards' widespread abuse and OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

---

[1] Oregon Dep't of Admin. Servs. Investigation Report, Case No. 123520 at 7.

COMPLAINT - 14
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

69.    H.A.H. has suffered emotional distress due to Edwards' abuse, including shame and embarrassment. H.A.H. continues to realize and struggle with the consequences of Edwards' conduct.

70.    H.A.H. sent formal notice of his claims on or around November 26, 2025, in compliance with ORS 30.275.

**ABUSE OF D.B.R.**

71.    D.B.R. is 47 years of age. In 1996, he was convicted and committed to the care and custody of OYA. OYA placed him in MacLaren from 1995 to 2000 when he was between 17 and 20 years of age.

72.    On various occasions, under the guise of physical exams, Edwards fondled D.B.R.'s penis and testicles. Edwards also pressed up against D.B.R. and touched his perineum area.

73.    D.B.R. reported Edwards' conduct to OYA staff, but nothing was done. Staff dismissed D.B.R.'s report and/or treated Edwards' conduct like a joke. OYA's inaction communicated to D.B.R. that there was nothing wrong with Edwards' conduct.

74.    In March 2025, D.B.R. learned through news reports of the claims against Edwards' other victims.

75.    It was then that D.B.R. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

76.    Since then, D.B.R. has realized that his struggles with anxiety, including mistrust and fear of going to the doctor, are because of Edwards' abuse.

77.    D.B.R. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

COMPLAINT - 15
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

## ABUSE OF R.L.H.

78.    R.L.H. is 42 years of age. In 1998, he was in the care and custody of OYA and placed at MacLaren. Edwards "took his pulse" by placing his ungloved hands on R.L.H.'s testicles. R.L.H. thought something was wrong and filed a grievance.

79.    No one ever interviewed R.L.H. to follow up on his report. OYA's inaction communicated to R.H. that Edwards' conduct constituted appropriate medical care.

80.    When news of Edwards' other victims came out in March 2025, R.L.H. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive.

81.    It was at that time that R.L.H. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

82.    It was also at that time that R.L.H. realized his avoidance of medical care was because of and related to Edwards' abusive conduct.

## ABUSE OF P.D.

83.    P.D. is 43 years of age. In 1998, P.D. was convicted and committed to the care and custody of OYA.

84.    P.D. entered MacLaren in the fall of 1998.

85.    In the fall of 1998, Edwards fondled P.D.'s penis and testicles under the guise of a medical exam.

86.    In or around the spring of 2025, P.D. learned about the magnitude of Edwards' abuse and OYA's responsibility to protect incarcerated youth. It was at that time that P.D. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

COMPLAINT - 16
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

87.    P.D. has experienced emotional distress because of Edwards' abuse, including distrust of medical care, fear, and shame.

88.    Since spring of 2025, P.D. is continuing to process the full impact of Edwards' abuse.

### ABUSE OF B.A.K.

89.    B.A.K. is 41 years old. He was in the care and custody of OYA and placed in MacLaren from 1999 through 2000 when he was 14 years old.

90.    Edwards fondled B.A.K.'s penis during his intake physical. Edwards again fondled B.A.K.'s penis in a subsequent medical exam.

91.    B.A.K. thought something was wrong and alerted staff. B.A.K. also filed a grievance.

92.    No one ever interviewed B.A.K. to follow up on his report. OYA's inaction communicated to B.A.K. that Edwards' conduct constituted appropriate medical care.

93.    When news of Edwards' other victims came out in March 2025, B.A.K. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive.

94.    It was at that time that B.A.K. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

95.    It was also at that time that B.A.K. realized his struggles with addiction was because of and related to Edwards' abusive conduct.

### ABUSE OF S.M.S.

96.    S.M.S. is 41 years of age.  In 1999, he was adjudicated and committed to the care and custody of OYA. OYA placed him at MacLaren from 1999 to 2002, when he was 15 to 18 years of age.

COMPLAINT - 17
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

97.    During his intake exam, Edwards fondled S.M.S.'s penis and testicles. This happened at least on one other occasion. On one occasion, Edwards tried to digitally penetrate S.M.S. If S.M.S. protested, Edwards refused to give S.M.S. medication that he needed to sleep.

98.    S.M.S. reported the acts to OYA staff on multiple occasions. OYA staff either did not respond or responded that such conduct was acceptable. OYA's inaction communicated to S.M.S. that Edwards' conduct constituted normal and appropriate medical care.

99.    In the spring of 2025, S.M.S. learned about Edwards through the news. It was then that S.M.S. realized Edwards' conduct was not normal or appropriate medical care but, in fact, constituted abuse.

100.    It was also then that S.M.S. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

101.    Since then, S.M.S. has started to realize the full effects Edwards' abuse has had on him, including his inability to trust people in authority; his refusal to go to the doctor, even when necessary; and his struggle with substance abuse.

### ABUSE OF A.Z.

102.    A.Z. is 41 years of age. In 1999, A.Z. was convicted and committed to the care and custody of OYA. OYA placed him at MacLaren from 1999 to 2006.

103.    A.Z. was shackled when he had to go to a medical exam. During the initial exam, Edwards fondled A.Z.'s genitals. Edwards again fondled A.Z.'s genitals on numerous subsequent occasions.

104.    A.Z. was confused by Edwards' conduct but believed that this was how medical exams were conducted in prison.

COMPLAINT - 18
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

105. Recently, after seeing news about Edwards' decades-long abuse, A.Z. began to understand that Edwards' conduct was not appropriate medical care, in prison or anywhere, and was in fact, abusive.

106. It was also at that time that A.Z. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

107. Since then, A.Z. has begun to realize the emotional distress the abuse has caused, including his anger issues.

108. A.Z. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

## ABUSE OF A.T.C.

109. A.T.C. is 42 years of age. In 2001, A.T.C. was convicted and committed to the care and custody of OYA. OYA placed him at MacLaren around late 2001.

110. During an intake exam, Edwards fondled A.T.C.'s genitalia, including stroking A.T.C.'s penis.

111. A.T.C. subsequently had to see Edwards for medical issues. Edwards fondled A.T.C.'s genitals and digitally penetrated A.T.C.'s anus on multiple occasions.

112. At the time, A.T.C. was uncomfortable with Edwards' conduct but did not know it was abusive.

113. Because he was unsure about the medical necessity of Edwards' conduct during visits, A.T.C. spoke with staff about his discomfort with Edwards.

114. Staff did nothing in response. OYA's inaction suggested to A.T.C. that Edwards' behavior was appropriate medical care.

COMPLAINT - 19
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

115.    Edwards was known as "Cold Fingers" by both youth and staff at MacLaren. OYA's tolerance of the nickname suggested to A.T.C. that Edwards' conduct was appropriate medical care.

116.    In the fall of 2025, A.T.C. learned about the claims against Edwards through the news. It was at that time that A.T.C. became aware that Edwards' conduct was abusive.

117.    It was also at that time that A.T.C. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

118.    A.T.C. has suffered emotional distress because of Edwards' abuse, including constant fear of medical visits. A.T.C. is continuing to process the full impact of Edwards' abuse.

119.    A.T.C. sent formal notice of his claims on or around October 27, 2025, in compliance with ORS 30.275.

## ABUSE OF Z.C.S.

120.    Z.C.S. is 35 years of age. In 2006, Z.C.S. was adjudicated and committed to the care and custody of OYA. OYA placed him at MacLaren starting in 2010.

121.    During a physical exam, Edwards fondled Z.C.S.'s testicles and penis. Edwards also inserted his finger in Z.C.S.'s anus causing him to ejaculate.

122.    At the time, Z.C.S. believed Edwards performed a medical procedure on him. Although the exam caused Z.C.S. to experience discomfort and shame, he rationalized the experience as medically necessary.

123.    In the spring of 2025, Z.C.S. learned about the claims against Edwards through a social media news story. It was at that time that Z.C.S. became aware that Edwards' conduct was abusive.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

SCHROETER, GOLDMARK & BENDER
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

124.    It was also at that time that Z.C.S. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

125.    Z.C.S. recently began processing the impact of Edwards' abuse, including emotional distress, a "twisted" sense of his sexuality, social withdrawal, and isolation.

126.    Z.C.S. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

## ABUSE OF M.J.

127.    M.J. is 37 years of age. In 2002, M.J. was adjudicated and committed to the care and custody of OYA. OYA placed him at MacLaren from 2006 to 2007 when he was 18 to 19 years of age.

128.    During an intake exam, Edwards fondled M.J.'s penis and testicles. Edwards also inserted a finger in M.J.'s anus.

129.    Staff and youth at MacLaren frequently joked around about Edwards, including calling him "Dr. Cold Fingers." Youth teased each other about having to see Edwards.

130.    Staff at MacLaren would threaten to send youth to the medical clinic if they did not follow staff orders, including attending school. The implication was that youth would have to see "Dr. Cold Fingers."

131.    M.J. was led to believe that Edwards' conduct during medical exams was normal and acceptable practice at MacLaren.

132.    In March 2025, M.J. saw reports of the claims against Edwards in the news. It was at that time that M.J. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

COMPLAINT - 21
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

133.    M.J. has suffered emotional distress because of Edwards' abuse, including guilt, shame, and embarrassment. Since March 2025, after realizing that OYA failed to prevent and stop the abuse, M.J. has experienced increased deterioration in his mental and physical health because of emotional distress.

134.    M.J. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

## ABUSE OF H.C.R.

135.    H.C.R. is 36 years of age. In 2008, H.C.R. was convicted and committed to the care and custody of OYA. OYA placed him at MacLaren around 2008.

136.    During a first annual exam, Edwards fondled H.C.R.'s testicles. He did not wear any gloves and was eating a sandwich. The exam lasted a long period of time.

137.    During this exam and each subsequent exam described below, H.C.R. was shackled at the wrists with "belly chains" and had ankle shackles on.

138.    H.C.R. was confused, but believed that the exam was appropriate medical care because Edwards was a doctor.

139.    On approximately an annual basis between 2008 and 2010, H.C.R. was brought to the medical clinic, shackled, and endured similar testicle "examinations."

140.    Everyone in OYA, staff and youth, referred to Edwards as "Cold Fingers."

141.    H.C.R. did not come to appreciate that what happened to him was abuse until he learned about the lawsuits filed against the OYA in approximately April 2025. It was at that time that H.C.R. learned that Edwards' conduct was not appropriate medical care and was in fact, abusive.

COMPLAINT - 22
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street • Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

142. It was also at that time that H.C.R. learned of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

143. H.C.R. has experienced emotional distress because of Edwards' abuse, including hyper-vigilance and issues establishing relationships. Since realizing Edwards' conduct was abusive, H.C.R. is continuing to process the full impact of Edwards' abuse.

144. H.C.R. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

## ABUSE OF W.A.

145. W.A. is 32 years of age. In 2008, W.A. was adjudicated and committed to the care and custody of OYA. OYA placed him at MacLaren from 2012 to 2016.

146. During various medical exams, Edwards fondled W.A.'s genitals. For instance, on at least one occasion, when W.A. saw Edwards for his asthma, Edwards fondled his groin area under the guise of a hernia check.

147. Staff joked about Edwards' conduct but did nothing in response. OYA's inaction suggested to W.A. that Edwards' conduct was medically appropriate care.

148. In March 2025, W.A. learned of the claims against Edwards. It was at that time that W.A. became aware that Edwards' conduct was not appropriate medical care and was in fact, abusive.

149. It was also at that time that W.A. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

150. W.A. has experienced emotional distress because of Edwards' abuse, including a fear of going to the doctor.

COMPLAINT - 23
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

151.    W.A. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

**ABUSE OF B.P.**

152.    B.P. is 29 years of age. In 2015, B.P. was convicted and committed to the care and custody of OYA. OYA placed B.P. at various facilities, including at MacLaren in 2017.

153.    In 2017, Edwards fondled B.P.'s penis and testicles under the guise of a medical exam. Edwards also instructed B.P. to bend over so that Edwards could examine his anus.

154.    Staff joked about Edwards' behavior and did not seem to care that his nickname amongst OYA staff and youth was "Dr. Cold Fingers." OYA's inaction towards Edwards suggested to B.P. that OYA was not responsible for Edwards' conduct.

155.    In or around spring 2025, B.P. learned about the magnitude of Edwards' abuse and OYA's responsibility to protect incarcerated youth. It was at that time that B.P. became aware of OYA's tortious conduct in knowing and allowing Edwards' abuse to continue for decades.

156.    B.P. has experienced emotional distress because of Edwards' abuse, including distrust of medical professionals, shame, and low self-esteem. Since spring 2025, B.P. is continuing to process the full impact of Edwards' abuse.

157.    B.P. sent formal notice of his claims on or around October 7, 2025, in compliance with ORS 30.275.

**ABUSE OF T.D.P.**

158.    T.D.P. is 27 years of age. In 2015, T.D.P. was convicted and committed to the care and custody of OYA. OYA placed him at MacLaren from 2015 to 2021.

159.    In 2017, T.D.P. went to Edwards for a shoulder injury. Edwards proceeded to perform a rectal exam and inserted his finger into T.D.P. He also fondled T.D.P.

COMPLAINT - 24
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

160. T.D.P. knew of others who were also abused by Edwards and believed they complained to OYA. OYA did not discipline Edwards. OYA's inaction communicated to T.D.P. that Edwards' conduct constituted appropriate medical care.

161. When news of Edwards' other victims came out in March 2025, T.D.P. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive.

162. It was also at that time that T.D.P. became aware of OYA's tortious conduct of knowing and allowing Edwards' abuse to continue for decades.

163. It was also at that time that T.D.P. realized his mental health struggles was because of and related to Edwards' abusive conduct.

164. T.D.P. sent formal notice of his claims on or around September 2, 2025, in compliance with ORS 30.275.

## FIRST CLAIM FOR RELIEF
### 42 USC § 1983 – Civil Rights Violation
### (Substantive Due Process - Violation of 14th Amendment)
(Plaintiffs H.A.H., R.L.H., B.A.K., S.M.S., Z.C.S., M.J., and W.A. Against All Individual Defendants)

165. Plaintiffs H.A.H., R.L.H., B.A.K., S.M.S., Z.C.S., M.J., and W.A. ("Youth Plaintiffs") reallege and incorporate herein paragraphs 1 through 164.

166. All individual Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

167. Edwards and all individual Defendants were acting under color of state law.

168. Edwards and all individual Defendants were working as staff members or employees of a youth correctional facility.

169. Youth Plaintiffs were confined to MacLaren as adjudicated youth at the time they were abused by Edwards as alleged above.

COMPLAINT - 25
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

*Edwards*

170.    Edwards touched Youth Plaintiffs in a sexual manner without legitimate penological or medical justification or purpose.

171.    Edwards touched Youth Plaintiffs in a sexual manner that was not reasonably related to any legitimate government objective.

172.    Edwards acted for his own sexual gratification.

173.    Edwards' sexual abuse of Youth Plaintiffs constituted a substantial departure from professional judgment, practice, or standards.

174.    Edwards failed to provide for Youth Plaintiffs' reasonable safety while confined in OYA facilities by repeatedly engaging in predatory sexual conduct with Youth Plaintiffs.

*Individual Defendants*

175.    Directors and Superintendents created the conditions at MacLaren under which Edwards' sexual abuse of Youth Plaintiffs was possible.

176.    Those conditions put Youth Plaintiffs at substantial risk of suffering serious harm, namely, the risk that Youth Plaintiffs would be sexually abused by Edwards.

177.    The Directors and Superintendents failed to take reasonable available measures to abate the risk that Youth Plaintiffs would be sexually abused by Edwards.

178.    The Directors and Superintendents, in failing to act to protect Youth Plaintiffs from sexual abuse by Edwards, failed to provide for Youth Plaintiffs' reasonable safety.

179.    The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards and served no penological justification.

COMPLAINT - 26
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street • Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

180. In so doing all of the above, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Youth Plaintiffs' right to be free from sexual contact with Edwards and constituted wanton and unnecessary infliction of harm.

181. No Defendants took reasonable, appropriate, and legally mandated steps to stop Edwards' sexual abuse from occurring.

182. Pursuant to 42 USC §1988, Youth Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in the prosecution of this action.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Civil Rights Violation**
**(Cruel and Unusual Punishment - Violation of 8th Amendment)**
(Plaintiffs D.B.R., P.D., A.Z., A.T.C., H.C.R., B.P., and T.D.P Against All Individual Defendants)

183. Plaintiffs D.B.R., P.D., A.Z., A.T.C., H.C.R., B.P., and T.D.P ("Adult Plaintiffs") reallege and incorporate herein paragraphs 1 through 164.

184. All individual Defendants were working within the course and scope of their employment at the OYA when they engaged in the wrongful conduct alleged above.

185. Edwards and all individual Defendants were acting under color of state law.

186. Edwards and all individual Defendants were working as staff members or employees of a youth correctional facility.

187. Adult Plaintiffs were confined to MacLaren as convicted adults at the time they were abused by Edwards as alleged above.

*Edwards*

188. Edwards touched Adult Plaintiffs in a sexual manner without legitimate penological or medical justification or purpose.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

189. Edwards touched Adult Plaintiffs in a sexual manner that was not reasonably related to any legitimate government objective.

190. Edwards acted for his own sexual gratification.

191. Edwards' sexual abuse of Adult Plaintiffs constituted a substantial departure from professional judgment, practice, or standards.

192. Edwards failed to provide for Adult Plaintiffs' reasonable safety while confined in OYA facilities by repeatedly engaging in predatory sexual conduct with Adult Plaintiffs.

***Individual Defendants***

193. Directors and Superintendents created the conditions at MacLaren under which Edwards' sexual abuse of Adult Plaintiffs was possible.

194. Those conditions put Adult Plaintiffs at substantial risk of suffering serious harm, namely, the risk that Adult Plaintiffs would be sexually abused by Edwards.

195. The Directors and Superintendents failed to take reasonable available measures to abate the risk that Adult Plaintiffs would be sexually abused by Edwards.

196. The Directors and Superintendents, in failing to act to protect Adult Plaintiffs from sexual abuse by Edwards, failed to provide for Adult Plaintiffs' reasonable safety.

197. The Directors' and Superintendents' failure to take reasonable available measures, as alleged above, constituted a substantial departure from professional judgment, practice, or standards and served no penological justification.

198. In so doing all of the above, given the history at OYA, the Directors and Superintendents evinced deliberate indifference to Adult Plaintiffs' right to be free from sexual contact with Edwards and constituted wanton and unnecessary infliction of harm.

COMPLAINT - 28
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

199.    No Defendants took reasonable, appropriate, and legally mandated steps to stop Edwards' sexual abuse from occurring.

200.    Pursuant to 42 USC §1988, Adult Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs incurred in the prosecution of this action.

## THIRD CLAIM FOR RELIEF
### Sexual Battery of Child – Respondeat Superior
(Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z. Against Defendant OYA)

201.    Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z. reallege and incorporate herein paragraphs 1 through 164.

202.    While acting in the course and scope of his employment for Defendant OYA, Edwards engaged in harmful and offensive touching of Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z. to which these Plaintiffs did not or could not consent, including groping their genitals and digitally penetrating certain Plaintiffs' rectums, as set out specifically above.

203.    Acts within the course and scope of Edwards' employment with Defendant OYA led to or resulted in the sexual batteries and exploitation of Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z..

204.    As a direct result of Edwards' sexual batteries and exploitation, Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z. have incurred economic and noneconomic damages as set out more fully above.

205.    Defendant OYA is vicariously liable for the sexual batteries and exploitation by Edwards. Therefore, Plaintiffs D.B.R., R.L.H., P.D., B.A.K., S.M.S., and A.Z. are entitled to compensatory damages from Defendant OYA in an amount to be determined by a jury.

COMPLAINT - 29
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

**FOURTH CLAIM FOR RELIEF**
**Negligence under OTCA**
(All Plaintiffs Against State of Oregon)

206. Plaintiffs reallege and incorporate herein paragraphs 1 through 164.

207. Defendant OYA, acting through its agent and/or employees, was negligent and at fault in one or more of the following ways:

a. Failing to adequately investigate reports of inappropriate conduct by Edwards;

b. Failing to ensure staff monitored interactions between Edwards and youth;

c. Failing to train, enforce, or implement PREA standards designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

d. Failing to train, enforce, or implement OYA policies designed to detect, prevent, stop, and/or investigate sexual misconduct of youth by staff;

e. Failing to investigate why Edwards was generally known by staff and youth as "Dr. Cold Fingers";

f. Ignoring continuing and credible complaints from youth about ongoing sexual misconduct by Edwards;

g. Failing to report Edwards' abuse to ODHS; and

h. Failing to complete investigations so that complaints could reach adjudication and findings could be reported or disclosed to OYA leadership to ensure proper discipline (including reporting to law enforcement), training, and/or remediation.

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

208.    The above acts and omissions not only failed to prevent the known risk of staff subjecting youth to sexual abuse, but also actively allowed such misconduct to continue unabated for decades.

## NOTICE OF POTENTIAL CONSTITUTIONAL QUESTION

209.    As to any claim for relief, to the extent that any of the Defendants seek to reduce any compensatory damage verdict in favor of Plaintiffs on the basis of statutory damages limits from former ORS 30.270 (repealed in 2009), Plaintiffs aver that such damages limits are constitutionally inadequate as applied to this case.

## DAMAGES

210.    As a direct and proximate result of the conduct of Defendants, Plaintiffs suffered economic and noneconomic damages, including:

  a.    Mental and emotional injury; and

  b.    Loss of Plaintiffs' civil rights to be free from sexual contact by staff members while incarcerated at a youth correctional facility.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court will enter a Judgment in their favor, and against Defendants, as follows:

  a.    Grant Plaintiffs compensatory damages against Defendants in an amount to be determined at trial;

  b.    Award Plaintiffs reasonable costs, expenses, and attorney fees; and

  c.    Grant Plaintiffs such further relief as this Court deems just and equitable under the circumstances.

COMPLAINT - 31
(Case No. 3:25-cv-02266)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

**DATED** this 5th day of December, 2025.

LEVI MERRITHEW HORST PC

*s/ Jesse Merrithew*
JESSE MERRITHEW, OSB # 074564
NORAH VAN DUSEN, OSB # 180114
SARA LONG, OSB # 224433
610 SW Alder Street, Suite 415
Portland, OR 97205-3605
Tel: (971) 229-1241
Email: jesse@lmhlegal.com
norah@lmhlegal.com
saralong@lmhlegal.com


SCHROETER GOLDMARK & BENDER

*s/ Hong Jiang*
REBECCA J. ROE, WSBA #7560
HONG JIANG, WSBA # 51914
BENJAMIN C. GAUEN, WSBA # 41815
401 Union Street, Suite 3400
Seattle, WA  98101
Tel:  (206) 622-8000
Email: roe@sgb-law.com
jiang@sgb-law.com
gauen@sgb-law.com

***Counsel for Plaintiffs***

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**SCHROETER, GOLDMARK & BENDER**
401 Union Street ● Suite 3400
Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305