IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

H.A.H., et al.

        Plaintiff,

v.

OREGON YOUTH AUTHORITY, et al.

        Defendants.

Case No. 3:25-cv-2266-MC

OPINION AND ORDER

---

MCSHANE, Judge:

Defendants move to dismiss Plaintiffs' 42 U.S.C. § 1983 claims, arguing the claims are untimely. Mot. Dismiss 2, ECF No. 6. Drawing all reasonable inferences in Plaintiffs' favor, Plantiffs' Section 1983 claims are timely. Defendants' Motion to Dismiss, ECF No. 6, is **DENIED**.

## BACKGROUND[1]

Plaintiffs, adults formerly incarcerated in the Oregon Youth Authority (OYA), allege that they were sexually abused by a MacLaren Correctional Facility pediatrician, Edward Gary Edwards, while in OYA custody. Compl. 14-25.

H.A.H., now 53 years old, was committed to OYA custody in 1990. *Id.* at ¶ 64. He was

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiffs' allegations as true. See *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

1 – Opinion and Order

placed at MacLaren. *Id.* In multiple medical appointments, "Edwards fondled H.A.H.'s penis and testicles . . . ." *Id.* at ¶ 65. H.A.H. was embarrassed and ashamed. *Id.* at ¶ 66. He "believed it was his own fault that he obtained an erection during the exam . . . [and] assumed that Edwards' conduct was appropriate medical care." *Id.* "When H.A.H. learned about Edwards' other victims [in 2025], he realized Edwards' conduct did not constitute appropriate medical care but was in fact abusive." *Id.* at ¶ 67. It was then, in 2025, that H.A.H. learned of Edwards' decades-long and widespread abuse. *Id.* at ¶ 68. H.A.H. alleges he suffers from emotional distress as a result of his abuse. *Id.* at ¶ 69.

D.B.R. was adjudicated delinquent and placed in OYA custody. *Id.* at 71. Between ages 17 and 20, from 1995 to 2000, he was placed in MacLaren. *Id.* "On various occasions, under the guise of physical exams, Edwards fondled D.B.R.'s penis and testicles. Edwards also pressed up against D.B.R. and touched his perineum area." *Id.* at ¶ 72. D.B.R. reported his experience to staff who "dismiss D.B.R.'s report, and/or treated Edwards' conduct like a joke." *Id.* at ¶ 73. In 2025, "D.B.R. learned through news reports of the claims against Edwards' other victims," and became aware that OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 78. D.B.R. alleges he suffers from anxiety due to his abuse. *Id.* at ¶ 76.

In 1998, R.I.H., now 42 years old, was in OYA's custody and was housed in MacLaren. *Id.* at ¶ 78. "Edwards "took his pulse" by placing his ungloved hands on R.L.H.'s testicles. R.L.H. thought something was wrong and filed a grievance." *Id.* No OYA or MacLaren staff followed up on R.L.H.'s grievance. *Id.* at ¶ 79. "When news of Edwards' other victims came out in March 2025, R.L.H. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive." *Id.* at ¶ 80. R.L.H. alleges that at this time, R.L.H. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 81.

P.D., now 43 years old, was committed to OYA in 1998. *Id.* at ¶ 83. He was housed in MacLaren. *Id.* at ¶ 84. That fall, "Edwards fondled P.D.'s penis and testicles under the guise of a medical exam." *Id.* at ¶ 85. In 2025, P.D. "learned about the magnitude of Edwards' abuse "and learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 86. P.D. has experienced emotional distress due to his abuse by Edwards. *Id.* at ¶ 87.

B.A.K. was committed to OYA, and housed in MacLaren, while he was 14 years old, from 1999 through 2000. *Id.* at ¶ 89. B.A.K. suffered two instances of abuse at Edwards' hands. *Id.* at ¶ 90. During B.A.K.'s intake physical examination, "Edwards fondled B.A.K.'s penis . . . ." *Id.* Edwards fondled B.A.K. again in a later appointment. *Id.* B.A.K. alerted OYA staff as to his experience and filed a grievance. *Id.* at ¶ 91. OYA staff did not "follow up" on B.A.K.'s report. *Id.* at ¶ 92. "When news of Edwards' other victims came out in . . . 2025, B.A.K. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive." *Id.* at ¶ 93. At that time, B.A.K. learned OYA "allow[ed] Edwards' abuse to continue for decades," and that his difficulties with addiction were related to Edwards' abuse. *Id.* at ¶ 94.

S.M.S was committed to OYA and housed in MacLaren between 1999 and 2002, between ages 15 to 18. *Id.* at ¶ 96. "During his intake exam [and at least one other appointment], Edwards fondled S.M.S.'s penis and testicles." *Id.* at ¶ 97. In another appointment, "Edwards tried to digitally penetrate S.M.S." *Id.* If S.M.S. protested, Edwards refused to give S.M.S. medication that he needed to sleep. *Id.* S.M.S. S.M.S. reported Edwards' conduct to OYA staff multiple times. *Id.* at ¶ 98. Staff did not respond to his reports, or they "responded that such conduct was acceptable." *Id.* In 2025, "S.M.S. learned about Edwards through the news. It was then that S.M.S. realized Edwards' conduct was not normal or appropriate medical care but, in fact, constituted abuse." *Id.* at ¶ 99. It was then, in 2025, that S.M.S. learned OYA "allow[ed]

Edwards' abuse to continue for decades." *Id.* at ¶ 100.

A.Z., now 41 years old, was committed to OYA and placed in MacLaren between 1999 and 2006. *Id.* at ¶ 102. "A.Z. was shackled when he had to go to a medical exam. During the initial exam, Edwards fondled A.Z.'s genitals. Edwards again fondled A.Z.'s genitals on numerous subsequent occasions." *Id.* at ¶ 103. Though he was confused by Edwards' actions, A.Z. believed Edwards' exams were typical of prison medical exams. *Id.* at ¶ 104. "Recently, after seeing news about Edwards' decades-long abuse, A.Z. began to understand that Edwards' conduct was not appropriate medical care, in prison or anywhere, and was in fact, abusive." *Id.* at ¶ 105. It was then that A.Z. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 106. Edwards' abuse caused A.Z. to suffer emotional distress. *Id.* at ¶ 107.

A.T.C, now 42 years old, was committed to OYA. *Id.* at ¶ 109. He was placed in MacLaren in 2001. *Id.* During A.T.C.'s intake examination, "Edwards fondled A.T.C.'s genitalia, including stroking A.T.C.'s penis." *Id.* at ¶ 110. During subsequent medical appointments with Edwards, Edwards "fondled A.T.C.'s genitals and digitally penetrated A.T.C.'s anus on multiple occasions." *Id.* at ¶ 111. "At the time, A.T.C. was uncomfortable with Edwards' conduct but did not know it was abusive." *Id.* at ¶ 112. A.T.C. told staff about "his discomfort with Edwards." *Id.* at ¶ 113. Staff did not act in response to A.T.C.'s comments. *Id.* at ¶ 114. "In the fall of 2025, A.T.C. learned about the claims against Edwards through the news. It was at that time that A.T.C. became aware that Edwards' conduct was abusive." *Id.* at ¶ 116. Simultaneously, A.T.C. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 117. Edwards' abuse caused A.T.C. to suffer emotional distress. *Id.* at ¶ 118.

Z.C.S., now 35 years old, was committed to OYA and placed in MacLaren beginning in 2010. *Id.* at ¶ 120. "During a physical exam, Edwards fondled Z.C.S.'s testicles and penis.

4 – Opinion and Order

Edwards also inserted his finger in Z.C.S.'s anus causing him to ejaculate. At the time, Z.C.S. believed Edwards performed a medical procedure on him. Although the exam caused Z.C.S. to experience discomfort and shame, he rationalized the experience as medically necessary." *Id.* at ¶ 121-122. In 2025, Z.C.S. became aware of the allegations against Edwards from social media. *Id.* at ¶ 120. It was then "Z.C.S. became aware that Edwards' conduct was abusive . . . [and that OYA] allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 123-24. Z.C.S. alleges Edwards' abuse impacted him by causing emotional distress. *Id.* at ¶ 125.

M.J. was committed to OYA in 2002. *Id.* at ¶ 127. He was housed at MacLaren from 2006 to 2007, when he was between 18 and 19 years old. *Id.* During M.J.'s intake examination, Edwards "fondled M.J.'s penis and testicles" and "inserted a finger in M.J.'s anus." *Id.* at ¶ 128. Comments from staff and youth "led [M.J.] to believe that Edwards' conduct during medical exams was normal and acceptable practice at MacLaren." *Id.* at ¶ 131. In 2025, "M.J. saw reports of the claims against Edwards in the news." *Id.* at ¶ 132. At that time, he learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 132. Edwards' abuse caused M.J. emotional distress. *Id.* at ¶ 133. "Since March 2025, after realizing that OYA failed to prevent and stop the abuse, M.J. has experienced increased deterioration in his mental and physical health because of emotional distress." *Id.*

H.C.R., now 36 years old, was committed to OYA and placed in MacLaren in 2008. *Id.* at ¶ 135. "During a first annual exam, Edwards fondled H.C.R.'s testicles. He did not wear any gloves and was eating a sandwich. The exam lasted a long period of time." *Id.* at ¶ 136. In this appointment, and in all later appointments with Edwards, "H.C.R. was shackled at the wrists with 'belly chains' and had ankle shackles on." *Id.* at ¶ 137. "H.C.R. was confused, but believed that the exam was appropriate medical care because Edwards was a doctor." *Id.* at ¶ 138. "On

5 – Opinion and Order

approximately an annual basis between 2008 and 2010," H.C.R. experienced similar abuse by Edwards while shackled. *Id.* at ¶ 139. "H.C.R. did not come to appreciate that what happened to him was abuse until he learned about the lawsuits filed against the OYA in approximately April 2025. It was at that time that H.C.R. learned that Edwards' conduct was not appropriate medical care and was in fact, abusive." *Id.* at ¶ 141. At that time, H.C.R. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 142. Edwards' abuse caused M.J. emotional distress. *Id.* at ¶ 143.

W.A., now 32 years old, was committed to OYA and placed at MacLaren between 2012 and 2016. *Id.* at ¶ 145. Edwards "fondled W.A.'s genitals" during multiple medical appointments. *Id.* at ¶ 146. "On at least one occasion, when W.A. saw Edwards for his asthma, Edwards fondled his groin area under the guise of a hernia check." *Id.* "In March 2025, W.A. learned of the claims against Edwards. It was at that time that W.A. became aware that Edwards' conduct was not appropriate medical care and was in fact, abusive." *Id.* at ¶ 148. At that time, H.C.R. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 149. Edwards' abuse caused W.A. emotional distress. *Id.* at ¶ 150.

B.P., now 29 years old, was committed to OYA in 2015 and placed at MacLaren in 2017. *Id.* at ¶ 152. "In 2017, Edwards fondled B.P.'s penis and testicles under the guise of a medical exam. Edwards also instructed B.P. to bend over so that Edwards could examine his anus." *Id.* at ¶ 153. "In or around spring 2025, B.P. learned about the magnitude of Edwards' abuse and OYA's responsibility to protect incarcerated youth." *Id.* at ¶ 155. At that time, B.P. learned OYA "allow[ed] Edwards' abuse to continue for decades." *Id.* at ¶ 155. Edwards' abuse caused W.A. emotional distress. *Id.* at ¶ 156.

T.D.P., now 27 years old, was committed to OYA in 2015 and placed at MacLaren from

2015 until 2021. *Id.* at ¶ 158. In a 2017 medical appointment for a shoulder injury, Edwards "performed a rectal exam [on B.P.] and inserted his finger into T.D.P.," in addition to fondling him. *Id.* at ¶ 159. "T.D.P. knew of others who were also abused by Edwards and believed they complained to OYA. OYA did not discipline Edwards." *Id.* at ¶ 160. In 2025, "when news of Edwards' other victims came out . . . T.D.P. realized Edwards' conduct did not constitute appropriate medical care, but was in fact abusive." *Id.* at ¶ 161. At that time, T.D.P. learned OYA "allow[ed] Edwards' abuse to continue for decades," and realized his mental health struggles stemmed from Edwards' abuse. *Id.* at ¶ 163.

## **LEGAL STANDARD**

Rule 12 permits defendants to move for the dismissal of an allegation because of plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss for failure to state a claim, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). To defeat a 12(b)(6) motion, a plaintiff must plead a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. To plead a facially plausible claim, a plaintiff must show merely "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 496 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679). When evaluating whether a plaintiff has stated a claim, the court cannot consider "matters outside the pleadings." Fed. R. Civ. P. 12(d).

The court instead asks only whether the complaint's factual allegations, if taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint that satisfies this standard is 'well-pleaded' and 'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Berk v. Choy*, 146 S. Ct. 546, 553 (2026) (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

Taking Plaintiffs' allegations as true, and drawing all reasonable inferences in their favor, Plaintiffs' Section 1983 claims are not time-barred. Section 1983 imposes liability on those who, under the color of state law, subject or cause the subjection of another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." It does not, however, contain a statute of limitations. Instead, Section 1983 borrows the general personal injury statute of limitations from the forum state, including the forum state's law regarding equitable tolling, "except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) When Oregon is the forum state, the governing statute of limitations for a 1983 claim is O.R.S. § 12.110, which requires tort claims to be filed within two years of their accrual. *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012). When a claim accrues while a plaintiff is a minor, the statute of limitations is tolled for "no more than five years" or until the minor turns 19, whichever comes first. O.R.S. § 12.160(1), (2).

A Section 1983 claim accrues "'when the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and the cause of that injury,'" not "when the plaintiff suspects a legal wrong." *Bonneau*, 666 F.3d at 581 (quoting *Lukovsky v. City and Cnty. of S.F.*, 535 F.3d 1044, 1049 (9th Cir. 2008)). "An action ordinarily accrues on the date of injury." *Ward v. Westinghouse Can., Inc.*, 32 F.3d 1405, 1407 (9th Cir.1994). Factual inquiries determining

8 – Opinion and Order

precisely when a plaintiff became aware of their injury is generally a question for the jury. *St. Clair v. Cnty. of Okanogan*, 154 F.4th 1154, 1160 (2025). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'" *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)).

The accrual of Section 1983 claims involving sexual abuse can be delayed by a plaintiff's vulnerability at the time of alleged incident, power imbalances between the plaintiff and defendant, and plaintiff's shame, humiliation, and guilt. *St. Clair*, 154 F.4th at 1160. In *St. Clair*, the court considered a 12(b)(6) motion attacking the timeliness of a Section 1983 claim involving sexual abuse by a sheriff's deputy. *Id.* at 1157-58. Plaintiff alleged that the deputy repeatedly "took advantage of her addiction to methamphetamines and involvement in criminal activity to coerce her into . . . unwanted sexual conduct." *Id.* at 1156. Plaintiff alleged that due to her addiction, age, and coercion, "she only came to understand she had been harmed [years later] when she read a news article . . . detailing [the deputy's] inappropriate sexual conduct with other similarly situated women." *Id.* at 1157, 1160. The court held that the plaintiff alleged sufficient "evidence at the motion to dismiss stage that the delayed realization of her injuries justifies the delayed filing," noting "'what [the plaintiff] knew and when she knew it are questions of fact,' better left for a jury." *Id.* at 1160 (alteration in original) (quoting *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986)).

Defendants argue that Plaintiffs' claims 1983 claims accrued at the time of Plaintiffs' alleged abuse. Plaintiffs' Section 1983 claims, however, do not seek relief for the injury of Edwards's abuse. Plaintiffs' alleged injury is the violation of their 14th Amendment substantive

due process rights. Plaintiffs' claims would, accordingly, accrue when Plaintiffs "knew or in the exercise of reasonable diligence should have known" of the violation of their rights and the cause of those violations.

The running of the statute of limitations is not apparent on the face of Plaintiffs' complaint—at this early stage, it is plausible that Plaintiffs only became aware of their constitutional injuries in the last two years. *St. Clair* is instructive here. Plaintiffs' circumstances are akin to that of the plaintiff in *St. Clair*. Like the plaintiff in *St. Clair*, all Plaintiffs here allege that they were repeatedly sexually abused by an authority figure while in a position of vulnerability; Plaintiffs as incarcerated youths and the *St. Clair* plaintiff as a criminally involved person addicted to drugs. Like the *St. Clair* plaintiff, these Plaintiffs experience struggles with addiction and mental health challenges.

The instant Plaintiffs, like the *St. Clair* plaintiff, allege that they only became aware of their constitutional injury years after the fact. *See St. Clair*, 154 F.4th at 1160 (recognizing a "flexible" standard as to claim accrual in sex abuses cases). The fact that some Plaintiffs filed grievances does not change the outcome here. Instead, the allegations here plausibly allege that by dismissing or failing to investigate the claims, OYA assured the youths that the abuse was merely a routine prison medical examination. The Court agrees with Plaintiffs' summary:

> Here . . . Plaintiffs did not know they were injured and/or the cause of their injuries at the time Dr. Edwards touched them. Plaintiffs do not allege that Dr. Edwards violently assaulted them. They do not allege that they experienced immediate physical injury. They do not allege that, prior to 2025, they knew the touching was sexually motivated or constituted sexual abuse. They do not allege that they suffered extreme emotional distress at the time of the touching. Rather, Plaintiffs allege they were touched under the guise of legitimate medical care in a medical clinic by a medical doctor they were required to see. Although some Plaintiffs allege they "though *something* was wrong" or felt "uncomfortable" when Dr. Edwards touched them, they did not know the cause of their injuries because Dr. Edwards' and the State Defendants' conduct assured them that the touching was medically appropriate. Plaintiffs' allegations demonstrate that they

10 – Opinion and Order

were 1) uncertain they had been injured and 2) what caused, if anything, the injury.

Pls.' Resp. 16, ECF No. 9 (internal footnote omitted).

Ultimately, the Court must refrain from attempting to divine precisely when plaintiffs became aware of the specific constitutional injuries alleged here and their cause. *See Doe v. Reese*, No. 3:24-CV-02011-AB, 2026 WL 125380 at *3 (D. Or. Jan. 16, 2026) (denying a similar 12(b)(6) motion in light of plaintiff's vulnerability and the factual inquiry necessary to ascertain accrual).

Finally, Defendants argue that *Doe v. County of Josephine*, 2015 WL 2412181 (D. Or. 2015) "is highly analogous to the case at hand." Defs.' Mot. 5. The Court disagrees. In *Doe*, plaintiffs alleged that they were sexually abused by their probation officer two decades before filing their claims under Section 1983. Importantly, in that case, "plaintiffs admit that they knew that they had been abused by [their probation officer], and no plaintiff asserts that he did not know or realize that [the probation officer's] abuse caused him injury at the time." *Doe*, 2015 WL 2412181 at *2. In contrast, Plaintiffs here specifically allege that for a variety of reasons—age, vulnerability, the abuse occurred during a purported medical examination, assurances by OYA staff that the examinations were in fact medically necessary, etc.—they did not realize that they had been abused or suffered any injury until decades later, when reports surfaced of Dr. Edwards's abuse and years of cover ups surrounding that abuse by OYA officials. At this stage, it is plausible that Plaintiffs only realized at that time that they had not merely been subjected to uncomfortable medical examinations but were victims of sexual abuse. In short, *Doe* does not support Defendants' arguments here.

/ / / /

/ / / /

11 – Opinion and Order

## **CONCLUSION**

Plaintiffs plead sufficient facts to state a claim to relief that is plausible on its face.

Defendants' Motion to Dismiss, ECF No. 6, is DENIED.


IT IS SO ORDERED.

DATED this 14th day of April 2026.

_____s/Michael J. McShane_____
Michael McShane
United States District Judge
